**SO ORDERED.**

**SIGNED this 03 day of December, 2009.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

MARK BENNETT COOPER and            CASE NO.   08-07789-8-RDD
BETH FERRELL COOPER,

    DEBTORS.


WILLIAM M. FULCHER and
VIRGINIA R. FULCHER,

    PLAINTIFFS                     ADVERSARY PROCEEDING
                                   NO.  L-09-00035-8-JRL
    v.

MARK BENNETT COOPER and
BETH FERRELL COOPER,

    DEFENDANTS.

### ORDER

This case is before the court on the complaint of William and Virginia Fulcher, creditors in the above styled bankruptcy, against Mark and Beth Cooper, the debtors and defendants in this action, to deny dischargeability of debt. On October 29, 2009, the court conducted a trial of this matter in Raleigh, North Carolina.

**FINDINGS OF FACT**

1.  Mark and Beth Cooper filed for Chapter 7 bankruptcy protection on September 9, 2008.

2.  Willard and Virginia Fulcher filed a complaint to deny dischargeability of debt against the debtors on February 16, 2009, asserting that the debtors obtained property from them by fraudulent means in violation of 11 U.S.C. § 523(a)(2)(A).

3.  Prior to filing for bankruptcy, the debtors operated a used-car dealership under the trade name of "Cooper Cars."

3.  On May 21, 2007, the parties entered into a contract for the purchase of a 2002 Ford Mustang (the "vehicle") from the debtors' car dealership.

4   According to the terms of the contract, the plaintiffs paid the defendants $9,200.00 in cash and delivered to them four new tires and four new rims in satisfaction of the purchase price. The plaintiffs then took delivery of the vehicle.

5.  As of July 9, 2007, the plaintiffs were unable to obtain title to the vehicle. The plaintiffs returned to the dealership and expressed their desire to return the vehicle because they could not obtain a valid title. The parties then entered into a novation under which they agreed that the debtors would repurchase the vehicle from the plaintiffs for the sum of $10,500.[1]

---

[1] Although the claim that the plaintiffs assert survives discharge rests on the novation, the original transaction was also problematic. Evidence presented at trial showed that the defendants were unable to produce the title to the vehicle because they did not own the vehicle but were instead selling it under an arrangement with another dealership. The defendants did not provide $9,200.00 paid to them by the plaintiffs as the purchase price of the vehicle to the other dealer as needed to obtain good title to the vehicle. At trial, the defendants admitted that they agreed to repurchase the vehicle because, by their own fault, they were unable to provide the plaintiffs with the title.

7. The plaintiffs returned the vehicle and all accompanying documentation to the debtors, and on July 17, 2009, the debtors issued one check in the amount of $5,500.00 payable to Virginia Fulcher and one check in the amount of $5,000.00 payable to Willard Fulcher. Both checks were drawn on the Cooper Cars account at Gateway Bank & Trust Company.

8. At the time of issuing the checks, Mr. Cooper informed the plaintiffs that the present account balance was insufficient to honor the checks, but assured them that funds were "pending" that would be available either in "a short time" or in "two or three days" and asked the plaintiffs to wait for the funds to clear before depositing the checks.

10. It was reasonable for the plaintiffs to rely on the debtors' affirmative representation that they had sufficient funds "pending," such that the checks written on the Cooper Cars checking account would be honored within a few days.

11. Approximately one week after accepting the checks in exchange for the vehicle, the plaintiffs presented the checks to the Gateway Bank and Trust Company branch in Moyock, North Carolina and were told that the account did not contain sufficient funds to cover the checks.

9. On July 23, 2009 the plaintiffs presented the checks to Gateway Bank and Trust Company in Elizabeth City, North Carolina, and were informed that the account lacked sufficient funds to honor either of the checks and that no deposit sufficient to cover the checks was pending in the account.

12. The plaintiffs then contacted the debtors with a request to meet them at the bank to clear the matter up, believing that there was some problem between the debtors and the bank.

        The debtors refused to accompany the plaintiffs to the bank.  The plaintiffs responded that they were unwilling to hold the checks any longer and would deposit them immediately.

13.    On July 23, 3007, the plaintiffs deposited the checks into their personal checking account.

10.    On July 26, 2007, the debtor-defendants issued stop payment orders on the two checks and both checks were returned to the plaintiffs unpaid.

12.    The debtors did not have adequate funds available to honor those checks until November of 2007.

11.    To date, the plaintiffs have received no payment from the debtors for the vehicle and as a result they have incurred damages in the amount of $10,500.00.

## CONCLUSIONS OF LAW

        Under 11 U.S.C. § 523(a)(2)(A), an individual will not be discharged of any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – false pretenses, a false representation, or actual fraud."  A creditor seeking to exempt a debt from discharge must establish all of the elements of fraud – "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of the damages." Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 218 (4th Cir. 2007).  Each of these elements must be proved beyond a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

        Initially, § 523(a)(2)(A) requires that the debt to be excepted from discharge be for money, property, services, or credit. Rountree, 478 F.3d at 219.  The Fourth Circuit has held that

the plain language of § 523(a)(2)(A) requires "that the debtor must have obtained *something* through fraud for the exception to apply." Id. at 223 (emphasis added).  In this case the standard is easily met because the debt incurred was from the sale of property.  The debtors obtained property in the form of the vehicle, plus four additional tires and rims, without compensating the plaintiffs for the property's value, which clearly satisfies the express terms of the statute.

     Next, the creditor must establish that the debt was obtained by false pretenses, false representation or actual fraud.  Although a split of authority exists as to whether the issuance of a check constitutes an implied representation that the check will be honored, most courts agree that the issuance of a worthless check is not in and of itself nondischargeable. See In re Sanchez, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002); Designed Flooring Distributors, Inc. v. Wagenti (In re Wagenti), 110 B.R. 602, 604 (Bankr. S.D. Fla. 1990).  This is so because the issuance of "a check is not a factual assertion at all" and therefore cannot be characterized as a false representation. Tusco Grocers Inc. v. Coatney (In re Coatney) 185 B.R. 546, 549 (Bankr. N.D. Ohio 1995) (quoting Williams v. United States, 458 U.S. 279, 284 (1982)).  However, a worthless check may form the basis of a nondischargeable debt if, at the time the check was issued, the debtor orally represented that funds were available to honor the check, knowing this to be false. See Wagenti, 110 B.R. at 604 (finding that "a debtor who knowingly issues a worthless check and makes oral representations that the check will be honored is guilty of making a false statement" under § 523(a)(2)(A)); Coatney, 185 B.R. at 550 (finding that "[a]ny positive statement regarding the nature of the Defendant-Debtors' bank balance or their intent to pay the debt could only be actionable under § 523(a)(2)(A) if the statements were made at the same time that the checks at issue were cut and transferred").

Intent to deceive may be established through circumstantial evidence or inferred from evidence of a "reckless disregard for the truth." Rimal v. Wibisono (In re Wibisono), 412 B.R. 747, 755-56 (Bankr. D. Md. 2009); Dean v. McDow, 299 B.R. 133, 140 (E.D. Va. 2003); see also Household Credit Services, Inc. v. Ettell (In re Ettell), 188 F.3d 1141, 1145 (9th Cir. 1999) (citing Anastas v. American Savings Bank (In re Anastas), 94 F.3d 1280, 1286 (9th Cir. 1996) (finding that "reckless disregard for the truth of a representation satisfies the element that the debtor has made an intentionally false representation")); Matter of Sheridan, 57 F.3d 627, 635 (7th Cir. 1995) ("To prevail on a claim [under § 523(a)(2)(A)], the creditor must show that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation.").

Here, the cardinal issue is whether the debtors' affirmative representation that funds were "pending" to cover the checks constitutes an intentional false representation within the meaning of § 523(a)(2)(A). The defendants argue that they fully informed the plaintiffs that there were insufficient funds in the account and that, therefore, there was no misrepresentation nor any intent to mislead or defraud the plaintiffs. However, at trial the debtors admitted that when they told the plaintiffs that funds were "pending" and would be available in a short time, this statement was based on the mere hope that the funds would be available in a few days. There is no evidence before the court to suggest that the debtors had any realistic belief or transaction identified that would produce sufficient funds in the time period indicated. In fact, the funds were not available for nearly four months after the checks were issued. When the debtors took possession of the vehicle and gave the plaintiffs checks for $10,500 and told them that funds were "pending" in the account, whether they said that in two to three days or in a short period of

time there would be money to honor those checks, that was either a false representation or it was made with such reckless disregard to its truthfulness that it rises to the level of a willful misrepresentation on which the plaintiffs relied.

The court finds that the debtors knowingly obtained property through the use of a false representation, made with the intent to deceive.  Further, the court finds that the plaintiffs' reliance on the debtors' representation that the car dealership's checking account would have sufficient funds available to cover the checks in a short period of time was reasonable and that such reliance was the proximate cause of damages incurred by the plaintiffs in the amount of $10,500.

Based on the foregoing, the discharge as to this debt is DENIED and it survives the bankruptcy.

**"END OF DOCUMENT"**